United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROCIO FLORES, Executor of the Estate of Paul Garcia, deceased, § § § | | |
| Plaintiff, § § | | |
| v. § § | Civil Action No. 2:21-CV-00265 | |
| MOREHEAD DOTTS RYBAK, INC., d/b/a MDR Advertising, § § § § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

On April 25, 2021, Paul Garcia passed away from cancer. Rocio Flores, his wife and the executrix of his estate, filed a lawsuit against his former employer, Defendant Morehead Dotts Rybak, Inc. ("MDR"), asserting violations of the Americans with Disability Act ("ADA"). MDR asserts that Flores does not have standing to bring this claim, as Garcia failed to exhaust his administrative remedies prior to his death and Flores may not exhaust such administrative remedies on Garcia's behalf.

Pending before the Court is MDR's Motion to Dismiss. For the following reasons, the Court **DENIES** the Motion.

### I. BACKGROUND

For purposes of addressing this Motion, the Court accepts all factual allegations in the Complaint as true and views them in the light most favorable to Flores. *See White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). Garcia worked as a senior web developer for MDR. (Dkt. No. 1 at 2). Starting around February 2020, he began to suffer

from severe migraines that required hospitalization. (*Id.* at 2–3). Garcia met with his supervisor and another coworker to discuss his health once in June and once again in July 2020. (*Id.* at 3). During the July 2020 meeting, his supervisor pressured him to sign a document which would force Garcia to use his vacation days for a mandatory medical leave. (*Id.*). He refused. (*Id.*). In the weeks following the July 2020 meeting, Garcia made multiple efforts to request reasonable accommodations from MDR but to no avail. (*Id.* at 4). On September 28, 2020, Garcia was diagnosed with cancer. (*Id.* at 5). Two days later, MDR fired him in a meeting to discuss accommodations. (*Id.*). After a seven-month battle with cancer, Garcia passed away on April 25, 2021. (Dkt. No. 10 at 2).

Three months later, Flores filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on behalf of Garcia's estate. (Dkt. No. 7-2). On August 27, 2021, the EEOC dismissed the Charge of Discrimination on jurisdictional grounds, holding that Garcia's estate did not have standing to bring the Charge. (Dkt. No. 7-3 at 1). Flores timely filed suit in federal district court on November 12, 2021. (Dkt. No. 1). MDR filed a motion to dismiss on December 9, 2021. (Dkt. No. 7).

MDR argues for dismissal under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Garcia's estate does not have standing to file the Charge of Discrimination, and as such, administrative remedies have not been exhausted. (Dkt. No. 7 at 1, 8–10). There are two issues before the Court: (1) whether this Court has subject matter jurisdiction over this case, and (2) whether Flores can file the Charge of Discrimination on behalf of Garcia's estate.

## II. LEGAL STANDARD

### A. RULE 12(B)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "lack of subject matter jurisdiction[.]" When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021). Dismissal for lack of subject matter jurisdiction is appropriate "when the plaintiff does not plausibly allege all jurisdictional allegations." *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (internal quotation marks omitted). "For a 12(b)(1) motion, the general burden is on the party asserting jurisdiction." *Dickson v. U.S.*, 11 F.4th 308, 312 (5th Cir. 2021). "When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

### B. RULE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief may be granted[.]" Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

3

127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.).

In reviewing a 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *White*, 996 F.3d at 306–07. The court must evaluate whether "a complaint contains sufficient factual matter to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965). Rule 12(b)(6) dismissals are generally disfavored. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

4

### III. DISCUSSION

#### A. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE

MDR asserts that Flores does not have standing to bring this claim because she failed to exhaust administrative remedies, and therefore, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, this case should be dismissed. (Dkt. No. 7 at 1, 4–5). Flores responds that Rule 12(b)(1) is inapplicable. (Dkt. No. 10 at 3–4). In its Reply, MDR does not address Flores's argument.

Even so, this Court must address whether it has jurisdiction because "federal courts must address jurisdictional questions whenever they are raised and must consider jurisdiction *sua sponte* if not raised by the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (citing *Kidd v. Southwest Airlines, Co.*, 891 F.2d 540, 546 (5th Cir. 1990). It is well-established that "subject-matter jurisdiction cannot be created by waiver or consent," *Howery*, 243 F.3d at 919, "[a]nd *sua sponte* dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction." *Carver*, 18 F.4th at 497 (citing Fed. R. Civ. P. 12(h)(3)).

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. But "jurisdiction . . . is a word of many, too many, meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998) (citation omitted). MDR's only qualm at this stage is that the executrix of Garcia's estate brings this lawsuit, *i.e.*, Garcia himself never filed a Charge of Discrimination with the EEOC while he was living. That is, MDR seeks dismissal because of Garcia's purported failure to exhaust administrative remedies. Indeed, a plaintiff must file a Charge of

5

Discrimination with the EEOC to exhaust his administrative remedies before suing under the ADA. *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378 (5th Cir. 2019). But the exhaustion requirement is not "jurisdictional" in the sense that it demonstrates the lack of subject matter jurisdiction; rather, the exhaustion requirement is a condition precedent to suit and an affirmative defense. *See Davis v. Fort Bend Cnty.*, 893 F.3d 300, 304–07 (5th Cir. 2018) (examining the Title VII exhaustion requirement); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (recognizing that the ADA incorporates by reference Title VII's administrative procedures); *accord EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753 n.3 (5th Cir. 2020). Since the ADA's administrative exhaustion requirement does not demonstrate the lack of subject matter jurisdiction, the Court **DENIES** MDR's Rule 12(b)(1) motion. *See Dao*, 96 F.3d at 788–89 (affirming dismissal under Rule 12(b)(6) for failure to exhaust an ADA claim with the EEOC).

### B. FLORES MAY FILE A CHARGE OF DISCRIMINATION ON BEHALF OF GARCIA'S ESTATE

It is undisputed that, to bring a suit under the ADA, "a complainant must file a charge of discrimination with the EEOC to exhaust his administrative remedies." *Melgar*, 931 F.3d at 378 (citing *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 77 (5th Cir. 1982) and *Dao*, 96 F.3d at 789).

MDR argues that an estate may not file a Charge of Discrimination on a decedent's behalf. (Dkt. No. 7 at 8–10). For this proposition, MDR cites *Pueschel v. Veneman,* 185 F. Supp. 2d 566, 571 (D. Md. 2002), *Wright ex rel. Wright v. United States,* 914 F. Supp. 2d 837 (S.D. Miss. 2012), and *Hardy v. Powell*, 314 F. Supp. 3d 359 (D.D.C. 2018). (*Id.* at 9).

6

MDR asserts that only the complainant himself is capable of articulating whether he subjectively felt discriminated against due to his disability.[1] (*Id.*). MDR also argues that the voluntary compliance and conciliation aims of the EEOC are undermined if the complainant is already deceased. (*Id.* at 10).[2]

Flores responds that, as the executrix, she may file the Charge of Discrimination on behalf of Garcia's estate because the claim accrued while Garcia was alive and then passed to his estate upon his death. (Dkt. No. 10 at 7–8). Flores also points out that all of MDR's cited cases are distinguishable because they are in the context of alleged discrimination against federal employees and that the remedial scheme for federal employees is different from that of non-federal employees. (Dkt. No. 10 at 5–6). Here, MDR is a private company, so the alleged discrimination against Garcia is in the context of private employment, not federal employment. (Dkt. No. 1 at 2); (Dkt. No. 10 at 6). Flores contrasts the federal-employee regime with the plain language of the ADA and applicable regulations for non-federal employees. *Compare* 29 C.F.R. § 1614.105(a) (federal employees) *with* 42 U.S.C. § 2000e-5(b) *and* 29 C.F.R. § 1601.7(a) (non-federal

---

[1] The Court believes MDR's evidentiary concerns are premature at the motion to dismiss stage. Whether or not circumstantial evidence exists to prove Garcia was discriminated against is an inquiry better suited for discovery.

[2] The Court is not persuaded by this argument. First, Garcia had already been fired before the initiation of his ADA claims. Even if Garcia had been alive, MDR is in no position to voluntarily comply with the ADA. Second, in cases where an employee's ADA claim has survived their death, courts have not been concerned about the voluntary compliance and conciliation aims of the EEOC being undermined. *See Wright*, 914 F. Supp. 2d at 841 ("The numerous courts that have considered whether a Title VII cause of action survives the death of the employee have consistently held that a Title VII cause of action that has been commenced prior to the employee's death survives the employee's death.").

employees). Last, Flores argues that the purpose of the ADA would be thwarted if pre-Charge of Discrimination claims were extinguished by the death of a claimant. (Dkt. No. 10 at 8–11).

In its Reply, MDR admits that Flores could have filed the Charge of Discrimination on Garcia's behalf while he was alive, but that after his death, Flores was no longer able to do so. (Dkt. No. 11 at 3–4). MDR argues that 29 C.F.R. § 1601.7(a) contemplates that the claimant is living because, under that rule, the EEOC is directed to "verify the authorization of such charge by the person on whose behalf the charge is made." (Dkt. No. 11 at 1) (quoting 29 C.F.R. § 1601.7(a)). MDR also points out that the adjacent 29 C.F.R. § 1601.7(b) requires the complainant to notify the EEOC with changes in contact information, again arguing that this contemplates that the complainant is living. (*Id.* at 2). Finally, MDR rehashes its earlier arguments regarding exhaustion of administrative remedies. (*Id.* at 3–4).

> 1. **There are No Statutory or Regulatory Provisions Prohibiting Flores from Filing Garcia's ADA Claims.**

A brief explanation of the ADA's enforcement mechanism is helpful here to discern the distinction between a federal and non-federal employee initiating an ADA claim. Section 2000e-5(b) of the United States Code, which houses the enforcement mechanism for the ADA, identifies that the Charge of Discrimination can be "filed by or *on behalf of a person* claiming to be aggrieved[.]" 42 U.S.C. § 2000e-5(b) (emphasis added). The federal regulations promulgated under the ADA also indicate that a Charge of Discrimination "may be made by or *on behalf of any person* claiming to be aggrieved." 29

8

C.F.R. § 1601.7(a) (emphasis added). Both statutory and regulatory provisions apply to federal and non-federal employees alike. The distinction in terms of the procedure for federal and non-federal employees alleging discrimination under the ADA becomes relevant at the claim-initiation stage.

The federal regulations provide special rules for how a federal employee must initiate their claim, which are not applicable to non-federal employees alleging discrimination under the ADA. *See generally* 29 C.F.R. §§ 1614.101–1614.707 (Federal Sector Equal Employment Opportunity). Specifically, among other requirements, federal employees must engage in pre-complaint processes. 29 C.F.R. § 1614.105(a) ("Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter."). Once the federal employee exhausts the informal-complaint process, the federal employee may engage in the formal complaint process, which is the same process non-federal employees engage in. *See* 42 U.S.C. § 2000e-5.

The Court finds no statutory or regulatory provisions disallowing the representative of a decedent's estate from initiating the administrative claim. MDR seems to have reached the same conclusion, as the only arguments MDR makes in support of its position is that 29 C.F.R. § 1601.7 contemplates that the claimant be living. (Dkt. No. 11 at 1–3). The Court is not persuaded by this interpretation of 29 C.F.R. § 1601.7. Here, the Charge of Discrimination is made on behalf of Garcia's estate. Flores, as the executrix of Garcia's estate, is in the position to verify the authorization of such Charge of

Discrimination and can serve as the point of contact for the claim. Further, accepting MDR's interpretation of Section 1601.7 would render the phrase "on behalf of a person claiming to be aggrieved" meaningless. This Court finds no statute or regulation disallowing Flores from initiating an EEOC claim of unlawful employment practices on behalf of Garcia's estate under 29 C.F.R. § 1601.7. To the contrary, the Court finds that the enforcement statute and regulations of the ADA expressly allow someone other than the employee discriminated against to initiate the claim. 42 U.S.C. § 2000e-5; 29 C.F.R. § 1601.7. As such, the Court holds that Flores may initiate ADA claims on behalf of Garcia's estate.

### 2. Whether an Estate May File a Charge of Discrimination with the EEOC on Behalf of a Non-Federal Employee's Estate is a Matter of First Impression for this Court.

Whether an estate may file a Charge of Discrimination with the EEOC appears to be an unresolved question in the Fifth Circuit. The Parties did not point the Court to any case that resolves the question, nor did the Court find one.

MDR identifies three non-binding federal district court cases out of Maryland, Mississippi, and the District of Columbia to support its position that an estate may not file a Charge of Discrimination on a decedent's behalf, *Pueschel*, 185 F. Supp. 2d at 571, *Wright ex rel. Wright*, 914 F. Supp. 2d at 837, and *Hardy*, 314 F. Supp.3d at 359. (Dkt. No. 7 at 8–9). The Court disagrees that the cited cases stand for the general proposition that an estate may never file a Charge of Discrimination with the EEOC. In fact, each of MDR's cited cases address EEOC enforcement of the federal government's internal policy providing equal opportunity employment, 29 C.F.R. § 1614.101(a), whose unique

10

complaint process applies only to a limited class of employees, 29 C.F.R. § 1614.103(b). When carrying out its general duty to enforce the ADA outside the context of the federal government, 29 C.F.R. § 1601.1, the EEOC uses procedures laid out in Section 1601 of the Code of Federal Regulation. Section 1601.7(a) allows charges of unlawful employment practices to be made either by the aggrieved party *or* by any "person, agency, or organization" acting on their behalf. 29 C.F.R. § 1601.7(a). MDR's cited cases do not address whether the estate of an aggrieved party can bring a Charge of Discrimination with the EEOC after their death.

Each of the cited cases involves the failure of the federal employees themselves, or their estates upon the death of the federal employee, to timely engage in the informal-complaint process which is required *only* for federal employees. *Pueschel*, 185 F. Supp. 2d at 570, 572 (daughter of deceased employee of the U.S. Department of Agriculture, Animal and Plant Health Inspection Service failed to timely file her mother's informal complaint within 45 days of the alleged discrimination); *Wright*, 914 F. Supp. 2d at 840, 843 (husband of deceased employee of the Transportation Security Administration failed to timely initiate an EEO complaint); *Hardy*, 314 F. Supp. 3d at 361–362 (personal representatives of deceased law enforcement officer of the Federal Reserve System failed to timely consult an EEO counselor); *see also Perkins for Est. of Perkins v. Brennan*, 821 F. App'x 630, 632 (7th Cir. 2020) (unreported) (finding that *Wright* and *Hardy* suggest "that the real issue with a representative trying to initiate an administrative claim on behalf of a decedent is a failure to timely exhaust[.]"). These cases do not address the underlying question, which is whether *timely initiation* by the decedent's representative

11

would have been acceptable.  And even if these cases did address the question, each case relates to the informal-complaint process which is inapplicable to Garcia, a non-federal employee.

This Court located a district court case that does not focus on 29 C.F.R. § 1614, and instead offers more analogous facts to those presented here, *DiFranco v. City of Chicago*, ____ F. Supp. 3d ____ (N.D. Ill. 2022), 2022 WL 672746.  In *DiFranco*, the independent administrator of Marco DiFranco's estate sued the City of Chicago under the ADA, alleging that the Chicago Police Department failed to offer the deceased reasonable accommodations, discriminated against him, and caused his death by failing at the outset of the COVID-19 pandemic to grant his request to work remotely, or alternatively socially distance from his co-workers.  *DiFranco*, 2022 WL 672746, at *1.  The district court determined that the EEOC policy of not allowing an estate to initiate a claim on behalf of the deceased federal employee was not binding on the court by looking to the Seventh Circuit case *Perkins for Est. of Perkins v. Brennan*. *Id.* at *3 (citing *Perkins*, 821 F. App'x at 631–632).  In *Perkins,* the Seventh Circuit acknowledged that the EEOC does not permit the estate of federal employees to initiate the exhaustion process with the EEOC, but the Court refused to be bound by such policy.  *Perkins*, 821 F. App'x at 632.

Further, the EEOC's policy is not as rigid as MDR argues because "the Commission recognizes that a federal employee's EEO claims may survive the death of the complainant in certain instances."  *Est. of Richard M. Krinsky, Complainant*, EEOC DOC 0120070431, 2007 WL 715558, at *1 (Mar. 2, 2007).  The Court in *DiFranco* relied on the Seventh Circuit's reasoning in *Perkins* despite the aggrieved party in *DiFranco* not being

12

a federal employee, and ultimately held that "Marco's failure to file an EEOC charge before his death did not preclude [his representative] from doing so, or from pursuing ADA claims, on behalf of his estate." *DiFranco*, 2022 WL 672746, at *3.

Accordingly, this Court holds that Flores could properly file a Charge of Discrimination on behalf of Garcia's estate, and in fact did so to the satisfaction of the EEOC, (Dkt. No. 7 at 9); (Dkt. No. 7-3 at 1), thereby exhausting the administrative remedies. Flores, therefore, has standing to bring her late husband's ADA claims. As this is MDR's only basis for lack of standing under Rule 12(b)(6) failure to state a claim, MDR's Motion to Dismiss fails.

## IV. CONCLUSION

Considering the foregoing analysis, the Court **DENIES** MDR's Motion to Dismiss. (Dkt. No. 7).

It is SO ORDERED.

Signed on September 29, 2022.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**